1814.

Dorsey
vs
Courtenay

---

DECEMBER.

## DORSEY vs. COURTENAY, *et al.* Lessee.

T D in 1788 executed a deed of trust to M and H, in which they were authorised,

APPEAL from *Baltimore* County Court. Ejectment on the demise of *John Skinner* for lot No. 38, in the city of amongst other things, to convey to C S a lot of ground No 38, in payment of a debt due from T D to C S, in case he, C S, consents to accept and receive said lot in satisfaction of said debt, within six weeks from the date of the deed. On the 20th of September 1790, the chancellor, on behalf of the state, conveyed the lot to M and H, reciting in his conveyance that the commissioners of confiscated *British* property sold the lot to J D, who sold and conveyed it to T D, and that T D had conveyed it to M and H, &c. J D, L W, S C and T D, in 1782, executed 23 bonds to the state, under the act of May 1781, ch. 23, for property purchased by them of the state. J D, with T D and P N his sureties, in 1781 passed their bond to the state, and which was released by the state to E D, the executrix and devisee of T D, by the act of 1791, ch 54. Process issued in 1788, in conformity to the act of May 1781, *ch* 33, on the 23 bonds executed by J D, and others, in 1782. T D died in 1790, and by his will devised his whole estate, real and personal, to E D, whom he also appointed his executrix. T D died insolvent, without leaving sufficient property to pay his debt due to the state; and J D, L W and S C, were insolvent, and were regularly discharged under the insolvent law after the date of the bonds, and before the death of T D. In 1790 the legislature, by a resolution directed the treasurer to cancel all bonds given to the state by J D, E N and T D, and by J D, L W, S C and T D. By the act of 1791, ch 54, the legislature declared that their intention, by the above resolution, was to benefit E D, and her children, and not the creditors of T D, or any other person, and they repealed the resolution, and directed the treasurer to receive the bonds and to deliver them to E D, to her use, after having acknowledged and endorsed on each bond satisfaction received by the state from her for the sum due on each bond; and that she should stand, in law and equity, in the place of the state. The act was complied with by the treasurer. Under the will of T D, and the assignment of the bonds, E D entered into possession of lot No 38. C S, in the deed of trust mentioned,

*Baltimore*, described by metes and bounds. Pending the suit *Skinner* died, and *Hercules Courtenay*, and others, his devisees, were made parties in his stead. The general issue was pleaded.

1. At the trial the plaintiff gave in evidence, that *Thomas Dorsey*, deceased, was in his life-time seized in fee of the premises in the declaration mentioned, and while so seized made a deed of conveyance, regularly executed, acknowledged and recorded, dated the 12th of August 1788, to *Archibald Moncrief* and *William Hammond*, reciting that said *Dorsey* being indebted to certain persons in sundry sums of money, was desirous to secure the payment of them, and had agreed to execute said deed. He therefore granted, &c. to *Moncrief* and *Hammond*, said lot, &c. and that *Moncrief & Hammond*, and their heirs, should have full power and authority, at all times thereafter, to convey and make over, by a good and sufficient deed or deeds in law, to *Clifford*, &c. and his heirs, for ever, &c. all that part of the lot of ground above described, situate in *Baltimore* town, &c. in payment and satisfaction of two bills of exchange, &c. provided *Clifford* consents to accept of and receive the said part of a lot, &c. as a compensation for the said money due on the said two bills, within six weeks from the date thereof, &c. Also that *Moncrief & Hammond*, and the survivor of them, and their heirs, should have full power, &c. at any time to make over and convey by a good deed, &c. to *Charles Steuart*, his heirs and assigns, part of the said lot, &c. in payment and satisfaction of the sum of, &c. due to the said *Steuart*, provided the said *Steuart* consents to accept, &c. The plaintiff further proved, that *Charles Steuart*, in the deed mentioned, was the person mentioned in the record of certain proceedings in the court of chancery herein after set forth, and was the surviving executor of *James Dick*; and that the lot of ground, in the said deed mentioned, as conveyed for the use of *Charles Steuart*, was the one for which the ejectment was brought. He also read in evidence a deed duly executed, acknowledged and recorded, from the chancellor of this

brought suit against T D for the debt due to him, and recovered judgment in 1788. He sued out *scire facias* thereon against r) D, as executrix of T D. and obtained a *fa:* in 1794 C S in 1794 filed a bill in chancery against M and H, to compel them to execute the trust, by conveying to him the lot No 3', and a decree passed for that purpose—Held, that the record and decree could not be read in evidence in an action of ejectment brought by J S's Lessee against E D, for the recovery of the said lot. Held also, that the decree of the chancellor, together with the deed from M and H to J S, the lessor of the plaintiff, and the *assignee* of C S, was not sufficient evidence of a due execution of the trust in the deed from T D to M and H

In this case the lessor of the plaintiff died pending the suit, and his devisees, claiming undivided parts of the land in dispute, were made parties,

1814.

Dorsey
vs
Courtenay

state to the said *Moncrief* and *Hammond*, dated the 20th of September 1790, reciting that the commissioners for the sale of confiscated *British* property sold lot No. 38, in *Baltimore* town, to *John Dorsey*, who sold and conveyed the same to *Thomas Dorsey*; that *Thomas Dorsey* had conveyed, &c. to *Moncrief & Hammond*, &c. The defendant then gave in evidence, that *Thomas Dorsey*, in his life-time, together with *John Dorsey*, *Luke Wheeler* and *Samuel Chase*, did, on the 4th of February 1782, pass their bonds, payable to the *State of Maryland*, for the principal sum of £8140 0 0, payable in bills of credit issued in pursuance of the act of assembly in such case made and provided; which said bonds were taken in virtue of the act of May session 1781, *ch.* 33, for property sold under that act. That *John Dorsey*, with *Thomas Dorsey* and *Edward Norwood*, securities, passed their bond to the state of *Maryland* for the principal sum of £1379, which bond was released to *Elizabeth Dorsey*, the defendant, the executrix and devisee of *Thomas Dorsey*, agreeably to the following statement of account by *T. Harwood*, treasurer of the western shore, charging confiscated property sold, and interest due on the bonds given therefor, crediting payments, &c. and also crediting, on the 16th of December 1790, by confiscated property, for bonds cancelled agreeably to a resolution of the general assembly of this date, (28th of December 1791,) £1397. "The above bonds of £1379 principal, received of *Eliza. Dorsey*, and delivered to her again, with the following endorsement—satisfaction received by the state from *Eliza. Dorsey* for the sum due on this bond, this 16th of December 1790—and I have delivered the said bonds to the said *Eliza. Dorsey*, to her use, according to an act, entitled, "An act for the relief of *Elizabeth Dorsey*, executrix of *Thomas Dorsey*, late of *Anne Arundel* county," passed December 23d 1791." She further gave in evidence, that such process was issued on the said bonds from the general court, and such proceedings were had therein from time to time, as are specified in the clerk's certificate, showing that process issued on 23 bonds executed to the state by *John Dorsey*, *Luke Wheeler*, *Samuel Chase*, and *Thomas Dorsey*, on the 4th of February 1782, for £8140, which said proceedings were in conformity to, and by virtue of, the act of May session 1781, *ch.* 33. She further gave in evidence, that the said

*Thomas Dorsey* died sometime in the year 1790, having first made his will. dated the 14th of March 1790, whereby he devised his whole estate, real, personal and mixed, after payment of his debts, to his wife *Elizabeth Dorsey*, and appointed her his executrix, &c. She further gave in evidence, that the said *Thomas Dorsey* died insolvent without leaving sufficient property, real and personal, to pay his debt due to the state; and that *John Dorsey*, *Luke Wheeler* and *Samuel Chase*, were insolvent, and regularly discharged under the insolvent law after the date of the said bonds, and before the death of the said *Thomas Dorsey*, and never discharged any part of the said debt to the the state. She further gave in evidence, that the general assembly, at November session 1790, passed the following resolution in her favour. "Whereas the resolution of this session in favour of *Elizabeth Dorsey*, executrix of *Thomas Dorsey*, is defective, and does not sufficiently express the meaning and intention of the legislature—Resolved, That the treasurer of the western shore be and he is hereby authorised and directed, to cancel all bonds now in the treasury, whereon any balance may be due, given to the state by *John Dorsey*, *Edward Norwood* and *Thomas Dorsey*, and by *John Dorsey*, *Luke Wheeler*, *Samuel Chase* and *Thomas Dorsey*." She also gave in evidence, that at November session 1791, the general assembly passed an act, entitled, "An act for the relief of *Elizabeth Dorsey*, executrix of *Thomas Dorsey*, late of *Anne Arundel* county, deceased," reciting, that "the general assembly, at their last session, did by their resolution authorise the treasurer of the western shore to cancel all bonds then in the treasury, whereon any balance was due, given by the aforesaid *Thomas Dorsey*, and other persons in the said resolution mentioned; and it was the intention of the general assembly by the said resolution to benefit the said *Elizabeth Dorsey*, and her children, and not the creditors of the said *Thomas Dorsey*, or any other persons whatsoever; and the same is not sufficiently expressive of the sense and intention of the legislature: and doubts having arisen whether the said resolution can be of benefit to her or her family; and all the said bonds are yet uncancelled, and the said resolution has not been carried into effect; and this general assembly being desirous and willing to carry the intention of the legislature into full effect, Be it enacted, &c. that the said re-

solution be and the same is hereby repealed, and the treasurer of the western shore is hereby authorised and directed, to receive the said bonds, and deliver them to the said *Elizabeth Dorsey*, to her use, after having acknowledged and endorsed on each bond, satisfaction received by the state from the said *Elizabeth Dorsey*, for the sum due on each bond at the date of the said resolution; and the said *Elizabeth Dorsey* shall stand, in law and equity, in the place of the state, and be entitled to retain in her hands, in her own right, the money due to the state from the said *Thomas Dorsey*, at the time of passing the before recited resolution; provided that the said *Elizabeth Dorsey* shall not, in virtue of this act, be entitled to ask, demand, sue for, recover or receive, the amount or value of the said bonds, or any part of them, of, or from, any of the co-obligors in the said bonds, their heirs, executors or administrators." She further gave in evidence, that under and by virtue of the said act of assembly, the treasurer of the western shore did deliver up to her the said *Elizabeth Dorsey*, the defendant, all the said bonds, with such endorsement on each bond as is herein before mentioned. That in pursuance of the will of the said *Thomas Dorsey*, and under the assignment aforesaid of the said bonds and debt from the state, she, the defendant, did immediately enter into the possession of the said lands mentioned in the declaration, and had been ever since in possession of the same, claiming right thereto. She further gave in evidence, that *Charles Steuart*, in the deed of trust mentioned, prosecuted a suit against said *Thomas Dorsey* for the debt aforesaid due by him to said *Steuart*, and obtained a judgment therefor in the general court at October term 1788, upon which he sued forth a writ of *capias ad satisfaciendum* against *Thomas Dorsey*, returnable to October term 1789, to lie in the office; and did further sue forth another writ of *capias ad satisfaciendum* thereon against the said *Thomas Dorsey*, returnable to May term 1790, to which no return was made by the sheriff; and did further sue forth to October 1791, a writ of *scire facias* against the said *Elizabeth Dorsey*, executrix of the said *Thomas Dorsey*, to revive the said judgment against her as executrix aforesaid, and did so prosecute said writ of *scire facias* as that a judgment thereon was obtained at May term 1794. The plaintiff having produced no other evidence, than that which is herein after mention-

ed, to prove that the said *Charles Steuart* had accepted the said premises in the declaration mentioned, according to the terms of the said deed of trust, then further to prove the title under the said deed of trust, he offered to read in evidence the proceedings in the court of chancery, on a bill filed by *Charles Steuart & James M‘Culloch*, surviving executors of *James Dick*, against *Archibald Moncrief & Wm. Hammond*, on the 14th of August 1794, setting forth that *Thomas Dorsey*, being indebted to the said *Steuart & M‘Culloch*, executed to them two bonds, &c. the same being for property belonging to the estate of *James Dick*, sold by the said executors; suits were brought thereon, and judgments recovered. That the said *Dorsey* executed a deed of trust to the said *Moncrief & Hammond*, &c. That in virtue of said deed the said trustees, to pay and satisfy the judgments aforesaid, were authorised and empowered to convey to the said *Charles Steuart & James M‘Culloch*, in fee, that part of the said lot, &c. provided the same was accepted by the said *Steuart & M‘Culloch* in full satisfaction of the money due as aforesaid. That no other sums of money than the amount of the judgment aforesaid, were due to the said *S. & M‘C.* from the said *Dorsey*, or *Dorsey, Wheeler*, & Co. and that the name of the said *Steuart* was alone mentioned in the deed as being a person of more business than the other two co-executors. That the said *Steuart*, by his attorney, sometime after the execution of the said deed, accepted and agreed to take the said part of the lot aforesaid, as expressed in the deed, and offered in consideration and satisfaction of the said judgment; and the said *Dorsey* was pleased therewith, and begged that no execution on the judgments might be served on him or his property, and in consequence none ever was served. That after the judgments and deed aforesaid, the chancellor, in order to carry the trusts into full effect and operation with the consent of the said *Dorsey*, conveyed an estate in fee to the said trustees of the said lot. The trustees refuse to convey, &c. The answers of *Moncrief* and *Hammond* stated, that they were willing to execute the trust in the manner the chancellor shall direct, &c. *Decreed*, the 24th of August 1801, that the defendants convey by deed, &c. to the complainants, all that part of a lot, &c. No. 38, in full satisfaction of all claim, &c. by the complainants against the defendants. To this evi-

dence the defendant objected. But the Court, [*Nicholson*, Ch. J. and *Hollingsworth*, A. J.] overruled the objection, and permitted the said record and decree to be read in evidence to the jury. The defendant excepted.

2. The plaintiff then read in evidence a deed, made under the decree of the chancellor, dated the 21st of October 1801, from *Moncrief* and *Hammond*, to *John Skinner*, reciting the decree of the court of chancery, and an assignment of *James M'Culloch's* right, &c. dated the 18th of September 1801, to the said *Skinner*. The facts stated in the deed were admitted to be true. The defendant then prayed the court to direct the jury, that the said evidence, if they believed it, was not sufficient or competent to prove the acceptance by *Charles Steuart* of the said lot so conveyed in trust for his use, in satisfaction of the debt in said deed mentioned, within six weeks from the date of said deed, according to the terms thereof. But the court were of opinion, that the decree of the chancellor, together with the deed from *Moncrief & Hammond* to *John Skinner*, was sufficient evidence of a due execution of the trust in the deed of the 12th of August 1788. The defendant excepted.

3. The plaintiff then gave in evidence, that *John Skinner* died since the institution of this suit, having first duly made his last will and testament, dated the 5th of February 1806, whereby he devised all the rest, residue and remainder, of his estate, both real and personal, not before disposed of, whatsoever nature or kind the same may be, in manner following, viz. The one equal moiety or half part thereof to *Elizabeth Rogers* and *Ann Rogers*, their heirs and assigns, and the other equal moiety to *Hercules Courtenay*, his heirs and assigns, for ever. And that *Elizabeth Rogers*, who hath since intermarried with *Robert Maxwell*, *Ann Rogers* and *Hercules Courtenay*, are the residuary devisees in said will, and are the persons made parties in this cause. The defendant then moved the court to direct the jury, that upon the whole evidence the plaintiff was not entitled to recover. But the court refused to give the direction. The defendant excepted; and the verdict and judgment being against her, she appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, EARLE, JOHNSON, and MARTIN, J. by

1814.

Dorsey
vs
Courtenay

 *Martin* and *T. Buchanan*, for the Appellant; and by *Harper*, for the Appellee.

CHASE, Ch. J. delivered the opinion of the court, dissenting from the opinions expressed by the county court in all the bills of exceptions.

JOHNSON, J. dissented and delivered the following opinion. In this case the lessors of the plaintiff and defendant claim under the same person, *Thomas Dorsey*, the latter under a bond executed by *Dorsey* in the year 1782, the former under a deed executed by him in the year 1788.

The bond was to the state of *Maryland*, and under an act of assembly gave to the state a lien on the land in question, and that bond having been transferred by the state, under another act of assembly, to the defendant, and that act having vested in her all the interest the state had, (so far as regards the land in controversy,) she became entitled to the lien on the property.

The deed executed in 1788, conveyed several tracts of land, including the lands in contest, to trustees, for the benefit of certain specified creditors, provided they within six weeks from the date of the deed, assented to receive the trusts raised for their benefit, in full satisfaction of their claims, and if not so received, then the trustees were to hold the property, subject to the control of the grantor.

It appears to be conceded on the part of the plaintiff, that the persons for whose use those original trusts were created, were not to have the benefit of them, except upon their timely assent thereto, and the consequent release of their claims. It would therefore appear to follow, that the plaintiff, claiming under one of those creditors, should establish the due assent and release of that creditor, before he can derive any benefit under the deed. To establish that fact, or to preclude the necessity of its establishment, he produced in evidence a bill filed in chancery by one of those creditors, against the trustees named in the deed, for the conveyance of the land in question, with the proceedings, and the decree passed thereon, directing such conveyance to be made. The bill was filed, and the decree obtained long after the expiration of the six weeks.

By the decree the land was directed to be conveyed to the complainant, but he having assigned the decree to the person under whom the plaintiff claims, prior to the con-

veyance, the conveyance was made to that person, and not, to the complainant.

There is no evidence in the cause to establish the assent and release, except the proceedings in chancery have that effect,. nor is there any thing to exclude the defendant, (claiming indirectly from *Thomas Dorsey*,) from demanding such proof, unless the proceedings in chancery and the deed will do so. The questions then arise, are the proceedings in chancery evidence of those facts? and if not, do they dispense with such proof? and if so, then will the deed made, not to the complainant in the cause; but to his assignee, transfer to him the legal title?

The proceedings in chancery having taken place in a cause in which the defendant was no party, cannot be received to establish any one fact necessary to be proved in this cause, and therefore it appears the court below erred in permitting them to go in evidence to prove the assent and release to have been obtained in due time. But although the court have erred, yet if the proceedings supercede the necessity of such proof, the judgment below having been in favour of the plaintiff, such error of itself presents no foundation for the reversal of that judgment.

The trustees were not authorized of themselves, to make the conveyances, except on the terms of the trust deed, and yet as the legal title was in them, there it must remain until parted with, even after the expiration of the time specified in the deed, and it is not perceived how they were to be deprived of that legal title, except by a conveyance, or something equivalent thereto. It may, and to me seems to follow, that therefore a conveyance by those trustees to the creditors, even if voluntarily made, without the timely assent and release of their debts, would have vested the legal estate in such creditors. The only effect would have been, that if the assent and release had existed, then the creditors would have had the legal estate, free from all trusts, if not, then subject to the future trusts of the grantor created by the deed.

To me, then, it appears to follow, that the person, to whose use the trustees did convey, holds the legal estate which they had, unless they were divested of the same by the decree, directing the conveyance to the complainant, in the suit in chancery, and not to his assignee.

The question then becomes important, did the decree of itself, or by the delay alleged, pass the estate?

Before the act of 1785, *ch.* 72, there was no mode to compel a conveyance under a decree directing it to be made, provided the person would withstand all the process of the court, such person, although deprived by the decree of the equitable estate, could not be divested of the legal one. The design of the legislature was to apply a remedy, and that was, by directing that the decree in certain cases should pass the legal estate. The legislature might, if they had thought proper, have directed, that the decree in all instances should have had effect; nor does it appear to me that any good reason can be offered, why such was not its provision; but such a construction of it, it appears evident to me, does not comport either with its letter or spirit. If the decree of itself, in all instances, passed the estate, then the deed, which the act directs to be executed, even when executed, could have no effect, for if the decree passed the estate, nothing remained for the deed to operate on. The legislature then designed, that subsequent proceedings should be had, to give to the decree the operation of a conveyance, and as the defendant could not refuse to convey, until the conveyance was demanded, therefore the demand was necessary, as he could not be charged with neglecting to convey, until asked to convey, the demand therefore must precede the charge of neglect.

Such I have always understood to have been the construction of the act of 1785, and indeed I am not sure that the demand must not appear by proof in the court of chancery, and that the refusal or neglect must appear by a subsequent order, or decree of the chancellor, before the conveyance of the legal estate was perfected.

It has been asked, where would be the legal estate if the defendant should die after the decree, and before the conveyance? If I am correct, it would be in his heir, and it would only be a common case, of the legal interest being in one, and the equitable one in another, and in the same manner as if after a sale of land, and before the conveyance, the person who sold it should have died, his heir would have the legal estate, and the purchaser or his representative, the equitable one, it would be one of those casualties, for which perhaps it is impossible to provide.

From these remarks then, my opinion is, that the court erred in permitting the proceedings in chancery to go in evidence to prove particular facts, but that they, and the deed by the trustees to the assignee of the complainant, were proper evidence to make out the title of the person under whom the plaintiff claims.

I therefore differ in opinion from the court below, on the second bill of exceptions, but as that was pronounced upon irrelevant matter, and not affecting the plaintiff's right who obtained the judgment, that judgment ought to be affirmed.

The prior lien of the bond can have no effect on the legal right to the land, the lien did not divest that legal right, and that having been transferred to the lessors of the plaintiff, he was entitled to recover, still (perhaps) holding it subject to the defendant's prior equitable right.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.